CARVILLE v. ROAD IMPROVEMENT DISTRICT No. 2.

Opinion delivered March 20, 1922.

1. HIGHWAYS—ROAD IMPROVEMENT DISTRICT—POWERS OF BOARD.—Act 97 of 1919 created a district for building, constructing and maintaining certain roads, authorizing the board to make the improvements as expeditiously and economically as possible and to make additional levies to complete the improvement, and to issue negotiable evidences of indebtedness. Act 423 of 1921, "to supplement and amend" the above act, provided that the power of the commissioners is "limited to completing the construction of the improvement," and directed them "to make the improvement herein authorized as expeditiously and economically as possible," and further provided that "the board of commissioners of said improvement district is hereby prohibited from making any additional levies of taxes, nor shall it borrow any more money or issue any more bonds." Held that the acts should be construed together, to provide that the commissioners were authorized to complete the improvement, and, if necessary to accomplish this purpose, to issue additional bonds and to make additional levies, but not to issue additional bonds or make additional levies of taxes for the purpose of maintaining or repairing the roads.

2. STATUTES—CONSTRUCTION AS A WHOLE.—The courts should construe an act as a whole so that all of its provisions, if possible, may harmonize and form a consistent and perfect law.

Appeal from Craighead Chancery Court, Western District; *Archer Wheatley*, Chancellor; affirmed.

*Arthur L. Adams*, for appellant.

Sec. 4 of act 423, 1921, does not violate sec. 22, art. 5 of the Constitution, as it is in effect a repealing statute. Repeals of statutes may be made by reference to title (47 Ark. 481; 99 Ark. 100), but an amendment cannot be so made.

Sec. 4 does not impair the obligation of contracts. The act does not attempt to affect the contracts in any manner, either as to terminating them or forbidding their further enforcement. The cases recognize a distinction between the impairment of the obligations of a contract and a breach or repudiation of the contract. See 108 Ark. 60; 115 Ark. 437; 113 Ark. 363; 119 Ark. 188; 19 C. J. p. 612, § 8.

*Basil Baker* and *Horace Sloan,* for appellees.

Sec. 4 of the amendatory act is void for the reason that it is in conflict with sec. 22, art. 5, Const. Sec. 1 of the last act amends secs. 1 and 2 of the former; while sec. 2 of the amendatory act is clearly an attempt to amend sec. 3 of the previous act, in violation of the above section of the Constitution. If sec. 4 be construed to be a repealing act, then all amendatory legislation, except where it adds only new matters and does not eliminate any old provisions, is repealing legislation, and sec. 22 of the Constitution above referred to. would be inapplicable. For a discussion of the distinction between a "repeal" and an "amendment," see 148 Ala. 381; 41 So. 903. See also 235 Mo. 687; 139 S. W. 443; 36 Col. 418; 85 Pac. 187; 169 Ind. 228; 82 N. E. 453. The title of the act clearly shows it was not intended as a repealing act.

The amendatory act does not apply to borrowing money, issuing bonds or levying taxes, to complete the improvement planned, but rather applies as a restraint on the commissioners from doing these things for the maintenance of the road when completed.

Sec. 4 impairs the obligation of contracts. 16 Wall. 314; Gray, Limitations of Taxing Power p. 524; 3 Ark. 285; 6 R. C. L. p. 328, 329. At the time of its passage the contract was partly executed, and partly executory, but in either event the Federal Constitution protects. 6 Cranch, U. S. 87, 3 Ed. 162; 4 Wall. 535; 96 U. S. 432; 109 Cal. 86; 8 Wheat. (U. S.), 5 L. Ed. 547.

As to the taxing power constituting an inherent part of a contract made by a political subdivision of the State, see 6 R. C. L. p. 345, sec. 338; 33 Ark. 690; 30 Ark. 435.

The district having authority to contract the debt and levy taxes to pay therefor, a subsequent Legislature could not take away that right. 103 U. S. 358; 71 U. S. 535; 105 U. S. 733; 111 U. S. 716; 116 U. S. 289; 134 Fed. 214; 102 U. S. 203; 122 U. S. 284.

WOOD, J. This action was instituted by the appellant against the appellees. He alleged, in substance, that appellee Road District No. 2 (hereinafter called district) was created and organized under act No. 97 of the Acts of the General Assembly of 1919, and that J. H. Whipple, H. H. McAdams and L. C. Glover are its commissioners; that the above act was supplemented and amended by act 423 of the Special Acts of the General Assembly of 1921, approved March 25, 1921, which act, among other things, provides as follows: "Sec. 4. The board of commissioners of said improvement district is hereby prohibited from making any additional levies of taxes, nor shall it borrow any more money or issue any more bonds" * * * *; that the J. E. Edwards Construction Company, a partnership composed of J. E. Edwards and H. C. Ribenack, were contractors to whom the commissioners had let the contract for doing the work of the improvement for which the district was created; that the contract was let after the assessment of the benefits, and that bonds had been issued in the sum of $295,000, which were outstanding in the hands of different holders; that the funds derived from the bond issue had been exhausted in the work of construction of the improvement; that the sum of $25,000 Federal aid had been allotted, and that this sum would be required to pay the retained percentages due the contractors; that the commissioners of the district had adopted a resolution stating that it was necessary in order to complete the improvement and to pay the indebtedness of the district already incurred, to borrow the additional sum of

$18,500, for which the commissioners proposed to issue additional bonds in the sum of $10,000, and to issue interest-bearing certificates of indebtedness to the contractors in the sum of $5,000, these additional bonds and certificates of indebtedness to be paid by an additional levy of taxes on the face of the assessment of benefits; and to borrow the sum of $3,500 on a promissory note, certificate of indebtedness or bond, for the purpose of meeting the semi-annual interest payment on the already existing bond issue, which interest would fall due February 1, 1922; that, notwithstanding the above provision of the supplemental act, the board was proposing to borrow money, issue more bonds and make additional levies of taxes.

The appellant prayed that the district and its commissioners be restrained from (a) issuing any more bonds; (b) from issuing any interest-bearing certificates of indebtedness to the contractors for the work done, or to be done, under the contract, in order to complete the improvement; (c) from making or attempting to make any additional levy of taxes for the purpose of paying the additional bonds and interest-bearing certificates of indebtedness; (d) from borrowing any more money and evidencing the same by bond, promissory note, or certificate of indebtedness. The complaint contained various exhibits showing the successive steps taken by the board after its organization looking to the completion of the improvement, which it is unnecessary to set forth.

In their answers the appellees deny that the board of commissioners was prohibited by § 4 of act 423 above mentioned from borrowing money as set forth in the complaint. They alleged that the money which the commissioners proposed to borrow was needed for the purpose of completing the improvement as originally planned, to carry out the contract according to its terms and to prevent default in the payment of the interest upon the bond issue. They averred that, if the purpose of sec. 4 of act 423 was to prevent the board of commissioners from borrowing money to complete the

improvement as originally planned, it was unconstitutional for various reasons which they alleged. They asserted that they had the power under the provisions of act 97 creating the district to borrow money and to proceed to do so in the manner indicated in the complaint. They alleged that before the passage of act 423, *supra*, more than half the total work of construction had been completed, and that at the present time all the work of construction excepting the surface treatment had been completed, and the surface treatment had been partly completed. They further alleged that, unless the district be permitted to levy an additional tax, a large amount of money due the contractors could not be paid by the district, to the loss of the contractors, and that the construction company would be delayed an indefinite period in the collection of the amounts due it; that the construction company relied upon the provisions of the law creating the district as furnishing it with a remedy for securing prompt payment of the amount due it under its contract; that if act 423 destroyed these remedies and deprived the district of the resources whereby it may discharge its obligations under the contract, said act necessarily impaired the obligations of the contract and was void. Other allegations of the complaint were denied.

The appellant demurred to the answer on the ground that it did not state a defense to the action, which demurrer was overruled. The appellant stood on his demurrer. The court thereupon entered a decree dismissing appellant's complaint for want of equity, from which is this appeal.

The question presented by this appeal is, what effect does § 4 of act 423 of the Special Acts of 1921, approved March 25, 1921, have on the powers of the commissioners of Road District No. 2 of Craighead County, Arkansas, conferred upon them by act 97 of the Acts of 1919, creating the district? Under section 1 of that act the district has "power to sue and be sued,

plead and be impleaded, and have perpetual succession for the purpose of building, improving and constructing, maintaining and repairing the roads hereinafter described, and may do all things reasonably necessary for the accomplishment of the purposes of this act. Under § 2 the district "is formed for the purpose of building, improving, constructing, maintaining and repairing" the public roads described therein. Under § 5 it is made the duty of the board of commissioners "to make the improvements herein authorized as expeditiously and economically as possible. They shall have all necessary powers to accomplish this purpose * * * * *."

Sec. 11, among other things, provides: "If the proportion of the assessment of benefits first levied is not sufficient to complete the improvements, the commissioners may make additional levies of such amounts as shall be sufficient to complete the improvement and pay all indebtedness of the district; the aggregate levy against any particular tract, however, not to exceed the assessment of benefits against that tract."

Sec. 18, among other things, provides: "In order to hasten the work the board may borrow money and issue its negotiable evidences of indebtedness for its repayment in such form as the board may adopt, and may issue bonds with interest coupons attached, or in such other form as the board may adopt, and dispose of them in such manner and for such amount as the board may deem best."

Now, the allegations of fact in the pleadings which are confessed to be true show that the board, for the purpose of doing the work of the district and in pursuance of its powers, had issued negotiable bonds in the sum of $295,000; that a contract had been let, and at the time of the passage of act No. 423 more than half the work of construction had been actually completed, and at the time of the institution of this action practically all of the work of construction except the surface treatment had been completed, and the surface treatment had been

partly completed.    The allegations of the complaint show that the assessed benefits to the lands from the improvements amounted to over $350,000.

Keeping to the fore the purpose for which the district was created and the powers conferred upon its commissioners by act No. 97, *supra,* and the acts already performed by them in pursuance of such powers, it is clear to the minds of a majority of the court that the Legislature did not intend by § 4 of act 423 to repeal the provisions of act 97, *supra,* which vests in the commissioners of the district the power to borrow money and issue negotiable evidence of indebtedness therefor and to make additional levies of taxes to complete the improvement under the original plans and specifications, and according to the contract that had been entered into for that purpose, and to pay all of the indebtedness of the district thereby incurred.

It occurs to us that act No. 423 was what it purports to be as expressed in its title, *i. e.,* "An act to supplement and amend act No. 97," and not to expressly repeal any of the provisions of act 97.

An examination of act 423 shows that none of the provisions of act 97 are expressly repealed by that act. While § 8 of act 423 provides for the repeal of all laws and parts of laws in conflict with the act, certainly none of the provisions of act 97 should be held to be repealed by implication unless, in considering the intention of the Legislature in both enactments, it is found that some of the provisions of the latter act are in conflict with the former.  Construing the acts together, as we must, we do not find any such conflict.   According to well recognized canons of construction, it is the duty of the court to construe an act as a whole, so that all of its provisions, if possible, will be in harmony and form a consistent and perfect law.   The appellant contends that under § 4 of act 423 the board had the power to complete the improvement only on condition that the taxes already levied, the money already borrowed, and the

proceeds of the bonds already sold were sufficient to complete the improvement according to the original plans and contract.    But we cannot concur in that view for the reason that it ignores the plain provisions of §§ 1 and 3 of the same act.

In § 1 it is provided: ''The power of the district is hereby expressly limited to completing the construction of the improvement now planned.''   Sec. 3 makes it ''the duty of said board of commissioners to make the improvements herein authorized as expeditiously and economically as possible.''   It expressly provides that ''they (the commissioners) shall have all necessary powers to accomplish this purpose * * * * *   It shall be the duty of the said commissioners to improve the roads herein described by grading, drainage, and surfacing them in such manner and with such materials as the plans of the district may designate, and by straightening them, and to construct bridges and culverts as needed on said roads, according to the plans of the district.''

The allegations of the complaint show that the district had exhausted the funds derived from its bond issue ($295,000) in the work of construction of the improvement; that the Federal aid expected but not yet received (of $25,000) would be required to repay the retained percentages due the contractors, and that it was necessary, in order to complete the improvement and pay the indebtedness of the district already incurred, to secure more money in the sum of $18,500 as set forth in the resolution of the board.   Here then is a project which under the allegations of the pleadings had already cost the district about three hundred thousand dollars and which only required the additional sum of $18,500 to complete the improvement, and which the district could not complete without funds.   The only method, under the law of its creation, for obtaining funds was by borrowing money and levying an additional tax on the face of the assessment of benefits on the lands of the district to pay the sums borrowed.   Now we must conclude that

the Legislature of 1921 understood the magnitude of the project which had been authorized and undertaken under act 97 of the Acts of 1919. With the history of this legislation and the progress of the work already done and to be done, under it in view, we are convinced that the Legislature in the passage of act 423 intended that act to be supplemental to, and amendatory of, act 97, and that both acts should be construed together so that the commissioners could complete the improvement already planned and have all necessary powers to accomplish this purpose. After expressly conferring upon them such power as is given by §§ 1 and 3 of the act, it is wholly unreasonable to construe § 4 as intending to abrogate such power. For such construction puts these provisions in conflict with each other and renders the express provisions of §§ 1 and 3 unavailing to the commissioners of the district and destroys the possibility of bringing the improvement to completion, contrary to the manifest purpose of the Legislature in both enactments. The phraseology of § 4 of act 423, considered in connection with §§ 1 and 3, is, to say the least of it, ambiguous. What then did the Legislature mean by this section? Under the original act the district was given the power not only of "building, improving and constructing the roads described therein," but also the power of "maintaining and repairing the roads," and this board had the power to borrow money and to issue negotiable bonds or other negotiable evidence of indebtedness therefor for all the purposes of the district.

It is manifest that the Legislature intended by § 4 to take away the power of the board of commissioners to borrow any more money or issue any more bonds or levy any additional taxes for the purpose of "maintenance and repair" of the improvement after its completion under the original act. Section 1 of the amendatory act expressly takes away the power of the board "to maintain and repair the roads now being constructed and improved by it." Sec. 7 of the act pro-

vides that "when the construction of the present pro-
posed improvement has been completed the county court
of Craighead County, Arkansas, shall take upon itself the
maintenance of the roads to be improved under this act."
So the dominant idea in the minds of the legislators in
the passage of act 423 was not to curtail the power of the
commissioners to complete the improvement contemplated
by act 97, nor the power to borrow more money and issue
more bonds and levy additional taxes for that pur-
pose, if necessary, but the Legislature intended, after the
improvement had been completed, to prohibit the com-
missioners from borrowing more money, issuing more
bonds, and levying additional taxes for the "maintenance
and repair" of the same. This construction harmonizes
the otherwise apparently conflicting provisions of act 423
and makes the act a valid statute. Under any other con-
struction it would fail because of its ambiguous and con-
flicting provisions. It follows that the court did not
err in overruling the demurrer to the answer and in
dismissing the appellant's complaint for want of equity.
The decree is therefore affirmed.

The Chief Justice and Mr. Justice HART dissent
from that part of the opinion which relates to the issue
of bonds.

McCULLOCH, C. J., (dissenting) If the new statute
means no more than the majority attribute to it, then § 1
thereof is the only effective part—the succeeding sections
may as well have been omitted.

Section 1 provides, in substance, that the district
shall not have authority to maintain the improvement,
and this is all the effect the court gives to the whole
statute.

It is the duty of courts in construing statutes to give
effect to each part if the apparently conflicting provisions
can be reconciled. That part of § 3 of the statute amend-
ing § 5 of the original statute which authorizes the com-
missioners to complete the improvement according to the

original plans can be harmonized with the inhibition in § 4 against additional taxation of benefits by holding, as we all agree, that the inhibition is not against levying taxes for the completion of the improvement according to the original plan. There is, however, no conflict between §§ 3 and 4 with respect to borrowing money and issuing bonds. Section 3, amending § 5 of the old statute, does not deal at all with that question. It only confers authority to complete the improvement, and that can be done without borrowing money or issuing bonds. Authority to complete the improvement carried with it the necessary authority to make contracts, incur obligations and even to issue evidences of indebtedness. *Altheimer* v. *Board of Directors,* 79 Ark. 229.

The inhibition against issuing bonds is emphatic in its terms and leaves the district without authority to do so for any purpose. There is, however, no conflict between the two sections. Section 4 is controlling, and, conceding that the district may exercise all the powers conferred in § 3, it is prohibited under § 4 from borrowing money or issuing bonds. No one has a legal right to dispute the power of the Legislature to impose this limitation on the authority of the district.

The authority under the original statute to borrow money and issue bonds is withdrawn by the later enactment now under consideration, and no one can complain. Such withdrawal of authority did not impair the obligation of any contract. Bonds already issued are not affected by the new statute, and the former authority to borrow money was not a part of the contract between the district and its creditors. No creditor can, by legal process, compel a debtor—whether the debtor be a public agency or not—to borrow money or issue negotiable bonds, even if the debtor has authority to do so. That is one of the things which must necessarily be left to the will or convenience of the debtor. The power to borrow money and issue bonds is a mere grant by the lawmakers,

which may or may not be exercised, according to the discretion of the commissioners of the district.

I dissent, therefore, from that part of the opinion which holds that the statute does not prohibit the district from borrowing money and issuing bonds to complete the improvement.

HART, J., concurs in this dissent.